# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| COOPER MARINE<br>& TIMBERLANDS CORPORATION,<br>    Plaintiff, | )<br>)<br>)<br>) | |
| v. | )<br>) | CIVIL ACTION NO. 1:18-CV-00101-N |
| BELLMARI TRADING USA, INC.,<br>    *in personam* | )<br>)<br>) | |
| and | )<br>) | |
| A CARGO OF 40,230 NET<br>TONS OF COAL<br>    *in rem* | )<br>)<br>)<br>) | |
|     Defendants. | )<br>) | |

## ORDER

This matter is before the Court on Plaintiff Cooper Marine & Timberlands Corporation's[1] "Verified Complaint for Attachment Under Rule B and/or Rule C Arrest." (Doc. 1).[2] The Verified Complaint indicates that diversity, admiralty, and supplemental jurisdiction are present pursuant to 28 U.S.C. §§ 1332, 1333, and 1367, respectively. (Doc. 1 at 1, ¶ 1). The undersigned has reviewed the Verified Complaint (Doc. 1) and, as discussed below, questions whether admiralty jurisdiction is present. Accordingly, on or before **Friday, March 16, 2018**, CMT shall brief the Court on this issue. The Court will withhold ruling on CMT's Motion for Issuance of an Arrest Warrant and Writ of Attachment (Doc. 4), Motion to Appoint a Substitute Custodian.

---

[1] Cooper Marine & Timberlands Corporation is referred to as "CMT" herein.
[2] Plaintiff's references to Rules B and C are to the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions.

(Docs. 5), and Cooper Consolidated LLC's[3] Motion to Intervene (Doc. 7) pending a determination as to this Court's jurisdiction pursuant to 28 U.S.C. § 1333.

## A. The Verified Complaint

This action arises out of a dispute regarding the storage of roughly 40,000 tons of coal. CMT's Verified Complaint states:

> 6. In August of 2017, at the request of the owners/operators of the ocean going bulk vessel M/V GILLINGHAM, CMT entered into an agreement for stevedoring services at CMT's facility to transfer the coal from the M/V GILLINGHAM onto the CMT dock to allow the coal to dry for a short period after which time the coal was expected to be reloaded onto the M/V GILLINGHAM for export.
>
> 7. The Agreement provided, among other terms, storage charges of $1,500 per day and all other costs related to the coal. CMT was told that the coal would be ready for reloading on the M/V GILLINGHAM for overseas shipment within a matter of days, once the excessive moisture content in the coal which caused a stability concern, was confirmed by testing to be within the approved level for transit.
>
> 8. The owners/operators of the M/V GILLINGHAM paid CMT for the stevedoring services and the initial storage but when the moisture content of the coal did not meet the specifications for the coal to be shipped overseas, the M/V GILLINGHAM sailed from Mobile, leaving the coal on the CMT dock.
>
> 9. At that point, Bellmari contracted with CMT to be responsible for the storage and related charges and agreed to procure a substitute vessel to complete the shipment to its customer.
>
> 10. On November 20, 2017, CMT invoiced Bellmari for storage of its coal from October 7 through November 30, 2017, which was paid by Bellmari. Bellmari was told that the coal would have to be moved from the dock if not shipped in the immediate future at Bellmari's expense.
>
> 11. When no vessel was provided by Bellmari to take the coal, CMT had the coal moved from its dock for storage at a different location on its terminal at the cost of $126,387.96. Although demand has been

---

[3] Cooper Consolidated LLC represents that it is a distinct corporate entity from CMT. (Doc. 7 at 3, ¶ 5).

2

made on Bellmari to pay those costs, that invoice remains outstanding. Bellmari has also refused to pay the storage charges from December 1, 2017 through the present date, at the rate of $1,500 per day. Copies of statements from CMT to Bellmari for December and January storage and the cost to move the coal from its dock are attached hereto as Exhibit A.

12.    Because of the refusal of Bellmari to remove its coal from CMT's facility, the coal will have to be moved a second time in the immediate future to another location on its terminal at an additional cost.

(Doc. 1 at 2-3). The Verified Complaint contains claims for breach of maritime contract, unjust enrichment, suit on open account, Rule B attachment, and Rule C arrest of cargo. (Doc. 1 at 4-8). CMT has not provided a copy of the contract(s) at issue. The dispute detailed in the Verified Complaint centers on Bellmari's alleged failure to pay for storage services.

**B.    Jurisdiction Pursuant to 28 U.S.C. § 1333**

This Court has an "independent duty to ensure admiralty jurisdiction exists before applying admiralty law." *Doe v. Celebrity Cruises, Inc.,* 394 F.3d 891, 899–900 (11th Cir. 2004)(internal citations omitted).[4] The undersigned has reviewed the Verified Complaint and questions whether the contract described in the Verified Complaint provides a sufficient basis for admiralty jurisdiction.

---

[4] The Court acknowledges that CMT has also pled diversity jurisdiction pursuant to 28 U.S.C. § 1332. However, even if diversity jurisdiction is present, neither Rule B attachment or Rule C arrest are available to CMT in the absence of admiralty jurisdiction. *See e.g James v. M/V EAGLE EXP.*, No. CA 12-423-MJ-C, 2012 WL 3068791, at *6 (S.D. Ala. July 27, 2012)("Importantly, Rule B provides a specific procedural remedy, not available in other federal civil cases, in cases that are within the jurisdiction of the federal court because of their maritime nature. The availability of the remedy thus turns on the nature of the federal jurisdiction over the case. Accordingly, if a court determines that a plaintiff's claim is not maritime in nature, the attachment remedy afforded by Rule B is not available.")(internal citations, quotations, and emphasis omitted).

With regard to contracts and admiralty jurisdiction, the Court of Appeals for the Eleventh Circuit has held:

> In order for a contract to fall within the federal admiralty jurisdiction, it must be wholly maritime in nature, or its non-maritime elements must be either insignificant or separable without prejudice to either party. To qualify as maritime, moreover, the elements of a contract must pertain directly to and be necessary for commerce or navigation upon navigable waters.... The test we apply in deciding whether the subject matter of a contract is necessary to the operation, navigation, or management of a ship is a test of reasonableness, not of absolute necessity.

*Inbesa Am., Inc. v. M/V Anglia*, 134 F.3d 1035, 1036 (11th Cir. 1998) (internal quotations and citations omitted).

The United States Supreme Court has held, "To ascertain whether a contract is a maritime one, we cannot look to whether a ship or other vessel was involved in the dispute, as we would in a putative maritime tort case.... Instead, the answer depends upon ... the nature and character of the contract, and the true criterion is whether it has reference to maritime service or maritime transactions." *Norfolk Southern Railway Co. v. Kirby,* 543 U.S. 14, 23-24 (2004)(internal quotations and citations omitted). Additionally, Court of Appeals for the Fifth Circuit has observed:

> A maritime contract is one in which the "primary objective is to accomplish the transportation of goods by sea...." *Norfolk Southern Ry. Co. v. Kirby,* 543 U.S. 14, 24, 125 S.Ct. 385, 160 L.Ed.2d 283 (2004). "It is well-established that such a sale of goods by itself would not be 'maritime' merely because the seller agrees to ship the goods by sea to the buyer." *Lucky–Goldstar Int'l (America) Inc. v. Phibro Energy Int'l Ltd.,* 958 F.2d 58, 59 (5th Cir.1992) (internal citation omitted). As summarized in a leading treatise:
>
>> In order to be considered maritime, there must be a *direct and substantial link* between the contract and the operation of the *ship, its navigation, or its management afloat,* taking into account

the needs of the shipping industry, for the very basis of the constitutional grant of admiralty jurisdiction was to ensure a national uniformity of approach to world shipping.

1 Benedict on Admiralty § 182 (2010) (emphasis added). A contrary rule would expand admiralty jurisdiction to include nearly every contract involving the sale of goods transported by ship. *Luckenbach S.S. Co. v. Gano Moore Co.,* 298 F. 343, 344 (S.D.N.Y.1923) (Hand, J.), *rev'd on other grounds,* 298 F. 344 (S.D.N.Y.1924).

*Alphamate Commodity GMBH v. CHS Europe SA*, 627 F.3d 183, 187 (5th Cir. 2010).

If a contract is not exclusively maritime, the contract may be what is referred to as a mixed contract, meaning it contains both maritime and non-maritime components. "A mixed contract may create maritime jurisdiction in only two limited circumstances. The court may consider a mixed contract maritime if the contract is primarily maritime and the non-maritime elements of the contract are incidental to that primary purpose. Alternatively, if a contract's maritime obligations are separable from its non-maritime aspects and can be tried separately without prejudice to the other, admiralty jurisdiction will support trial of the maritime obligations." *Id.* at 187 (internal quotations and citations omitted).

Though stevedoring is mentioned in the Verified Complaint, it seems the contract concerns storage of coal on land, and the alleged breach concerns non-payment of the costs associated with that storage. The Verified Complaint states, "The Agreement provided, among other terms, storage charges of $1,500 per day." (Doc. 1 at 1, ¶ 7). Those "other terms" are unknown to the Court. *See also e.g. Brocsonic Co. v. M/V ""MATHILDE MAERSK"",* 120 F. Supp. 2d 372 (S.D.N.Y. 2000), *aff'd sub nom. Brocsonic Co. v. M/V Mathilde Maersk,* 270 F.3d 106 (2d Cir.

2001)(Holding that storage of cargo on land was not sufficiently related to maritime activity to invoke federal admiralty jurisdiction and discussing, *inter alia*, admiralty jurisdiction and mixed contracts); *Nehring v. Steamship M/V Point Vail,* 901 F.2d 1044, 1048 (11th Cir.1990)("Not every contract that somehow relates to a ship or its business is considered maritime.").

**C.     Conclusion**

Upon consideration of the foregoing, on or before **Friday, March 16, 2018**, CMT shall brief the Court regarding the presence of admiralty jurisdiction.

**DONE** and **ORDERED** this the **9th** day of **March 2018**.

/s/ *Katherine P. Nelson*
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**